```
        IN THE UNITED STATES DISTRICT COURT
     FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GEORGE KONTONOTAS          :    CIVIL ACTION
                           :
         v.                :
                           :
HYGROSOL PHARMACEUTICAL    :
CORPORATION, et al.        :    NO. 07-4989
```

                                ORDER

         AND NOW, this 21st day of July, 2008, upon

consideration of the defendants' motion to dismiss the amended

complaint (docket entries #14 and 15), plaintiff's response,

defendant's motion for leave to file a reply (docket entries #20

and 21), the reply, plaintiff's motion to file a second amended

complaint (docket entry #18), and the Court finding that:

         (a)  Plaintiff George Kontonotas asserts claims for

breach of contract and unjust enrichment against defendants

Hygrosol Pharmaceutical Corporation ("HPC") and Spiro Spireas;

         (b)  Kontonotas is a salesman and met Spireas in the

1990's, Compl. ¶¶ 7-8;

         (c)  Spireas was a professor at Long Island University

at the time, and held a patent covering a chemical process called

"Hygrosol", id. ¶¶ 9-10;

         (d)  Kontonotas avers that Spireas asked Kontonotas to

find him a job with a pharmaceutical company, and that in late

1997 or early 1998, Kontonotas arranged a meeting between Spireas

and representatives of United Research Laboratories and Mutual Pharmaceutical ("Mutual"), which Kontonotas also attended, id. ¶¶ 11-12;

(e)  Kontonotas alleges that some time after the meeting Mutual hired Spireas as a consultant until he could leave his post at Long Island University; sometime thereafter, Mutual hired Spireas as a vice-president, id. ¶ 14;

(f)  Around the time Mutual hired Spireas, Kontonotas and defendant HPC entered into a contract that specified certain instances in which HPC would pay Kontonotas commissions; Spireas also signed the contract as vice-president of HPC, id. ¶ 15, Ex. A at 4;

(g)  The contract contains three different commissions provisions which are relevant here:

It is understood that the company shall pay a commission to [Kontonotas] for all formulas using the patented Hygrosol Technology for products designed by [HPC] for other corporations which have been introduced to [HPC] by [Kontonotas] or entities related to the health and nutritional field (direct or indirectly).  A 15% percent [sic] commission of the gross sales of billings which are received by [HPC] will be paid to [Kontonotas] (or his heirs) less the amount of reasonable expenses (not to exceed 10% of the total dollar amount received by [HPC] unless previously agreed upon with [Kontonotas]) no later than 15 days after [HPC] receives payment for the goods and/or services provided by [HPC] to the health & nutritional customers.  All commissions will be accompanied by an

2

invoice outlining the transaction resulting to the said
commissions.

Id. Ex. A, § 1.1 (emphasis in original);

No commission will be payable for sales to
pharmaceutical companies, and [Kontonotas] does not
have a license to market the Products to pharmaceutical
companies or for pharmaceutical uses.  [Kontonotas] is
not [HPC's] agent for the purpose of marketing the
Products to pharmaceutical companies or for
pharmaceutical uses other than the current agreement
being negotiated with Mutual Pharmaceuticals and any of
their affiliated companies in which instance,
[Kontonotas] will receive a commission from the company
and will be negotiated separately[.]

Id. Ex. A, § 1.2;

If [HPC] (not [Kontonotas]) locates a customer for the
products and such customer is in the health and
nutritional field, [Konotonotas] will be entitled to a
commission of 10% of the gross receipts, less the
amount of reasonable expenses as described in provision
(1.1) incurred by [HPC].  Such commission will be paid
no later than 15 days after [HPC] receives money for
the product(s) provided by [HPC] to the health and
nutritional customers located by [HPC].  This
commission will be owed to [Kontonotas] for
transactions entered into while the agreement is in
effect."

Id. Ex. A, § 1.4;

        (h)  The contract also provides a definition for the

term "Product":

Whereas, it is hereby acknowledged that [HPC], has the
ability to formulate for the purposes of selling raw
materials and or other nutritional products with
various delivery systems using its patented hygrosol
technology in connection with products used in and or

3

by health and nutritional companies all of which shall
be hereinafter referred to as the "Product(s)".

Id. Ex. A at 1;

(i)  Kontonotas alleges that between 1998 and 2005 he
contacted Spireas regarding the progress of Spireas's projects at
Mutual, and Spireas repeatedly assured him that he would be
compensated "when the right time comes," id. ¶ 23;

(j)  Kontonotas avers that in 2005 he learned that
Mutual was starting to sell Felodipine, a product Kontonotas
believes Spireas developed for Mutual; Kontonotas also cites a
Mutual press release stating that Mutual was expecting an
increase in sales from $385 million to $530 million, which Mutual
attributed largely to sales of Felodipine, id. ¶¶ 24-25;

(k)  Kontonotas then contacted HPC and Spireas and
requested they compensate him according to the contract, which
the defendants have refused to do, id. ¶¶ 26-27;

(l)  Kontonotas filed suit claiming that HPC has
violated the contract, and that both HPC and Spireas were liable
under a theory of unjust enrichment; HPC and Spireas now move to
dismiss the amended complaint under Fed. R. Civ. P. 12(b)(6);[1]

---

[1]In reviewing a motion to dismiss for failure to state a
claim, "[w]e accept all well pleaded factual allegations as true
and draw all reasonable inferences from such allegations in favor

(m)   Kontonotas asserts three counts: first, breach of contract against HPC for violating either §§ 1.1, 1.2, or 1.4 of the contract; second, an unjust enrichment claim against Spireas based on compensation he received from Mutual for both Hygrosol and non-Hygrosol products; and third, an unjust enrichment claim against HPC alleging that if we find that no enforceable contract existed between HPC and Kontonotas, he is nevertheless entitled for recovery on an unjust enrichment theory;

(n)   Before proceeding further, we must determine whether New York or Pennsylvania law applies to these claims;

(o)   When we have jurisdiction based on diversity of citizenship, we apply Pennsylvania choice of law principles, On Air Entertainment Corp. v. Nat'l Indem. Co., 210 F.3d 146, 149 (3d Cir. 2000);

---

of the complainant." Worldcom, Inc. v. Graphnet, Inc., 343 F.3d 651, 653 (3d Cir. 2003).
    To survive a motion to dismiss, the plaintiff must "allege facts sufficient to raise a right to relief above the speculative level." Broadcom Corp. v. Qualcomm Inc., 501 F.3d 297, 317 (3d Cir. Sept. 4, 2007) (citing Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007)).  The complaint must include "enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S. Ct. at 1974. This requires "either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Haspel v. State Farm Mut. Auto. Ins. Co., 2007 WL 2030272 at *1 (3d Cir. Jul. 16, 2007) (unpublished) (quoting Twombly, 127 S. Ct. at 1969).

(p)   Pennsylvania courts generally honor a contract's choice of law provision, Kuritz v. Okuma Mach. Tool, Inc., 40 F.3d 52, 55 (3d Cir. 1994); here, the contract specifies that New York law applies, Compl. Ex. A, § 7, and therefore we will apply New York State law to the contract;

(q)   Outside of the forum selection clause context, Pennsylvania choice of law principles require that courts first determine whether the laws of the respective states are actually different; if they are different, then the court examines the governmental policies underlying the laws to determine whether this difference amounts to a conflict that is false, i.e., only one state has an interest, true, i.e., both states have an interest, or unprovided-for, i.e., neither state has an interest; if there is a true conflict, then the courts must consider the various contacts between the events, individuals, and states involved, and "weigh the contacts on a qualitative scale according to their relation to the policies and interests underlying the particular issue," Hammersmith v. TIG Ins. Co., 480 F.3d 220, 228-31 (3d Cir. 2007);

(r)   Here the law of unjust enrichment in New York and

6

Pennsylvania are different;[2] in both states, the underlying
governmental interest is to prevent the defendant's retaining the
benefit conferred by the plaintiff at the expense of the
plaintiff, <u>Powers v. Lycoming Engines</u>, 245 F.R.D. 226, 231 (E.D.
Pa. 2007) (collecting cases from a variety of jurisdictions,
including New York and Pennsylvania, for choice of law purposes
and analyzing the governmental interest for unjust enrichment
claims);

      (s)  At the time the quasi-contract would have come
into existence, Spireas and Kontonotas were both New York
residents, and the agreement would have been performed in New

---

[2]Under Pennsylvania law the elements of an unjust enrichment
claim are "(1) benefits conferred on defendant by plaintiff, (2)
appreciation of such benefits by defendant, and (3) acceptance
and retention of such benefits under such circumstances that it
would be inequitable for defendant to retain the benefit without
payment of value." <u>Schenck v. K.E. David, Ltd.</u>, 666 A.2d 327,
328-9 (Pa. Super. 1995).  The cause of action accrues "as of the
date the relationship between the parties is terminated, [i.e.,]
when appellee breached the express or implied agreement to pay or
when the parties severed their relationship," <u>Cole v. Lawrence</u>,
701 A.2d 987, 989 (Pa. Super. 1997).
    In New York, the elements for unjust enrichment are "(1)
performance of services in good faith, (2) acceptance of the
services by the person for whom they were rendered, (3) an
expectation of compensation, and (4) the reasonable value of the
services performed." <u>Clark v. Torian</u>, 625 N.Y.S.D.2d 370 (N.Y.
Dep't 1995).  The cause of action accrues "upon the occurrence of
the wrongful act giving rise to the duty of restitution."
<u>Elliott v. Qwest Commc'n Corp.</u>, 808 N.Y.S.2d 443, 445 (N.Y. 3d
Dep't 2006).

York; in fact, the only aspect of this alleged quasi-contract that is not centered in New York is HPC, which is a Pennsylvania corporation; but Pennsylvania's governmental interest underlying its unjust enrichment law is in protecting plaintiffs like Kontonotas, not defendants like HPC; therefore, this is a false conflict, and only New York has an interest in seeing its law applied here; thus, we will apply New York law of unjust enrichment;

(t)  We now turn to the contract claim;

(u)  Defendants argue that none of the contract's commission provisions applies here;

(v)  First, defendants argue that Kontonotas is not due commissions under §§ 1.1 and 1.2 because the contract defines "Product(s)" as "products used in and or by health and nutritional companies" which specifically excludes pharmaceuticals, and Felodipine is a pharmaceutical; thus, sales of Felodipine are not covered by the contract;

(w)  But to accept this argument we would have to make a factual finding that Felodipine is not a product used in and or by health and nutritional companies -- a finding we cannot make

on the record before us;[3]

(x)   Second, defendants argue that § 1.2 does not apply because Kontonotas does not allege that there was a contract between HPC and Mutual that would trigger the portion of the provision that would entitle Kontonotas to commissions;

(y)   But Kontonotas avers that HPC and Spireas own the Hygrosol process, HPC, Spireas, and Mutual sought to develop commercializations for that process, and now Mutual is collecting revenue for a product that uses the process, Compl. ¶¶ 17, 24-25; although Kontonotas has not overtly averred the existence of an agreement between HPC and Mutual, such an agreement is a reasonable inference from the facts averred;

(z)   Third, defendants argue that § 1.4 does not apply because Mutual is a pharmaceutical company and this section only concerns commissions from health and nutritional companies; Kontonotas counters that the claim for damages under § 1.4 of the contract relates to the sales of HPC Products to any health and

---

[3]Defendants attach the affidavit of Dr. Sanford Bolton to their reply.  Bolton testifies that Felodipine is a pharmaceutical.  However, no one has moved for summary judgment and the parties have not developed a record sufficient at this time to convert this motion to one for summary judgment. Therefore, we must ignore the factual averments in the affidavit as they are inapposite in determining the motion pursuant Fed. R. Civ. P. 12(b)(6).

nutritional companies, and therefore Mutual's status as a
pharmaceutical company is irrelevant, arguing that this count
seeks damages for any covered sales;

(aa) Although we give liberal reading to complaints,
the focus of this complaint and all the averments relating to the
claims under § 1.4 pertain <u>only</u> to transactions involving Mutual;
there are no allegations involving any other company, nor any
from which we could infer that Kontonotas seeks damages for sales
to any other company other than Mutual; therefore, we will
dismiss the claims arising from § 1.4 of the contract;

(bb) We now turn to the Konotonotas's unjust enrichment
claims;

(cc) Defendants argue that Kontonotas's claims are
time-barred;

(dd) If it is plain from the face of the complaint that
the claims are barred by the statute of limitations, then we are
obliged to dismiss the claims, <u>Oshiver v. Levin, Fishbein, Sedran</u>
<u>& Berman</u>, 28 F.3d 1380, 1384 n.1 (3d Cir. 1994);

(ee) Although the parties contend that Pennsylvania's
four year statute of limitations applies because of
Pennsylvania's borrowing statute, but we have already determined
that New York law applies, and this includes its statute of

10

limitations, which is six years, N.Y.C.P.L.R. 213;

(ff) Regardless of the applicable statute of
limitations, the defendants argue that the cause of action
accrued in 1998, when Kontonotas organized the meeting between
the defendants and Mutual; and thus, even applying the six year
statute of limitations, the statute of limitations ran in 2004;

(gg) But under New York law, an unjust enrichment claim
only accrues "upon the occurrence of the wrongful act giving rise
to the duty of restitution," Elliott v. Qwest Commc'n Corp., 808
N.Y.S.2d 443, 445 (N.Y. 3d Dep't 2006); Sitkowski v. Petzing, 572
N.Y.S.2d 930, 931-32 (N.Y. 2d Dep't 1991) (finding question of
fact as to date cause of action accrued when plaintiff alleged
defendant had convinced plaintiff that only defendant's name
should be on property that they were to own jointly, and
defendant would later transfer a half interest in the property,
which he did not do; the property was conveyed in February 16,
1982; defendant demanded plaintiff vacate premises in the summer
of 1985; plaintiff filed suit on May 20, 1988);

(hh) Kontonotas avers that he had been in contact with
Spireas in the years between 1998 and 2005 and followed up on
developments at Mutual that he believed would warrant his
compensation; Kontonotas avers that he held off demanding

11

compensation because of assurances from Spireas, Compl. ¶ 23;
accepting the facts averred as true, it would not be until
Spireas and HPC refused to compensate Kontonotas in 2005 that the
"wrongful act giving rise to the duty of restitution" occurred;

(ii) Thus, we cannot dismiss Kontonotas's unjust
enrichment claims as time-barred based solely on the facts
averred in the complaint;

(jj) Defendants argue that Kontonotas cannot establish
a claim for unjust enrichment because he was given a benefit for
helping set up the meeting between defendants and Mutual, namely
the licensing agreement to market HPC products to health and
nutritional companies;

(kk) We cannot dismiss the complaint on this basis
because it would require a factual finding that the license to
market HPC products to these types of companies was intended as
compensation for organizing the meeting between defendants and
Mutual; we cannot make such a finding on the record before us;

(ll) Defendants argue that Kontonotas's unjust
enrichment claim has no merit because the contract between
defendants and Kontonotas covers the subject matter of this
claim;

(mm) Under New York law, "the existence of a valid and

enforceable written contract governing the particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter," <u>Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.</u>, 516 N.E.2d 190, 193 (1987);

(nn) Were we to hold the contract attached to the complaint covered the subject matter of this claim, we would have ignore the portion of § 1.2 that states that Kontonotas has no claim to commissions for sales of HPC products to pharmaceutical companies <u>except</u> in the case of the agreement with Mutual for which Kontonotas "will receive a commission from the company and will be negotiated separately," Compl. Ex. A, § 1.2; if an agreement between HPC and Mutual came to fruition, but no contract was negotiated between Kontonotas and the defendants regarding his commission, then Konotonotas could have a valid claim for unjust enrichment; there are not enough facts in the record for us to make such a determination now;

(oo) Plaintiff moves for leave to file a second amended complaint if we find that Kontonotas insufficiently pleaded the existence of the contract between HPC and Mutual in order to specifically aver that HPC and Mutual entered into an agreement that the contract here covered, or, alternatively, HPC is the alter ego of Spireas, and thus liable for contracts Spireas

13

entered into;

(pp) We have already found that one can infer that Kontonotas avers the existence of an agreement between HPC and Mutual from the allegations in the complaint as presented; therefore, further amendment for this purpose is unnecessary;

It is hereby ORDERED that:

1.   Defendants' motion for leave to file a reply is GRANTED;

2.   Defendants' motion to dismiss the amended complaint is GRANTED IN PART;

3.   Those portions of Count 1 arising from § 1.4 of the contract are DISMISSED;

4.   In all other respects, defendants' motion to dismiss is DENIED;

5.   Plaintiff's motion for leave to file an amended complaint is DENIED; and

6.   Defendants shall ANSWER the amended complaint by July 31, 2008.

BY THE COURT:


/s/ Stewart Dalzell, J.

14